**SEYFARTH SHAW LLP**
Eric R. McDonough (SBN 193956)
emcdonough@seyfarth.com
Daniel R. Sable (SBN 245171)
dsable@seyfarth.com
333 S. Hope Street, Suite 3900
Los Angeles, California 90071
Telephone:    (213) 270-9600

**SEYFARTH SHAW LLP**
Marianne M. Dickson (SBN 249737)
mdickson@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone:    (415) 397-2823

Attorneys for Equity Security Holders
Lana and Elaine Tsang

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 15-10691-TD |
| GOLD RIVER VALLEY, LLC, | Chapter 11 |
| Debtor. | **MOTION TO APPOINT CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. § 1104**<br><br>Date: March 4, 2015<br>Time: 2:00 p.m.<br>Place: Honorable Thomas B. Donovan<br>        Courtroom 1345 |

18881423v.3

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................................... 3

    A. The Tsangs' Invest Over $3 Million in Exchange for a Combined 40% Membership Interest in Debtor. ................................................................................. 3

    B. Discovery of Ko's Fraud and Dishonesty as to Debtor ....................................... 5

    C. Appointment of Receiver, Non-Judicial Foreclosure Sale, & Debtor's Bankruptcy ............................................................................................................. 7

    D. Other Lawsuits Alleging Similar Bad Acts Against Ko, Gao and Others. .......... 8

III. ARGUMENT ........................................................................................................................ 8

    A. The Standards Governing the Appointment of a Chapter 11 Trustee ................ 8

    B. "Cause" Exists to Appoint a Chapter 11 Trustee Under Section 1104(a)(1) for Ko's Fraud, Dishonesty, and Conflicts of Interest with Debtor ..................... 10

        1. Ko's Conflicts of Interest ............................................................................... 10

        2. Ko's Misuse of Assets and Funds ................................................................. 11

        3. Various Instances of Conduct Found to Establish Fraud or Dishonesty ...... 12

        4. Lack of Credibility and Creditor Confidence ............................................... 13

    C. Further Support for Appointment of Chapter 11 Trustee Exists Under Section 1104(a)(2) ................................................................................................ 14

IV. CONCLUSION ................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Comm. of Dalkon Shield Claimants v. A.H. Robins Co. Inc.*,
   828 F.2d 239 (4th Cir. 1987) ..................................................................................................10

*Commodity Futures Trading Comm'n v. Weintraub*,
   471 U.S. 343 (1985)................................................................................................................14

*In re Bellevue Place Assocs.*,
   171 B.R. 615 (Bankr. N.D. Ill.), *aff'd, Bellevue Place Assocs. V. Caisse Centrale Des
   Banques Populaires*, No. 94-C-5089, 1004
   U.S. Dist. LEXIS 17409 (N.D. Ill. Dec. 6, 1994) ............................................................10, 14

*In re Bibo, Inc.*,
   76 F.3d 256 (9th Cir. 1996) ....................................................................................................13

*In re Centennial Textiles, Inc.*,
   227 B.R. 606 (S.D.N.Y. 1998)..................................................................................................9

*In re Clinton Centrifuge, Inc.*,
   885 B.R. 980 (Bankr. E.D. Pa. 1988) .........................................................................10, 11, 13

*In re Intercat, Inc.*,
   247 B.R. 911 (Bankr. S.D. Ga. 2000) .......................................................................................9

*In re Ionosphere Clubs, Inc.*,
   113 B.R. 164 (Bankr. S.D.N.Y. 1990).....................................................................................14

*In re Lowenschuss*,
   171 F.3d 673 (9th Cir. 1999) ....................................................................................................8

*In re Madison Mgmt. Group, Inc.*,
   137 B.R. 275 (Bankr. N.D. Ill. 1992) .....................................................................................14

*In re Marvel Entertainment Group, Inc.*,
   140 F.3d 463 (3d Cir. 1998)......................................................................................................9

*In re Morpheus Lights, Inc.*,
   228 B.R. 449 (Bankr. N.D. Cal. 1998) ................................................................................9, 12

*In re Nat'l R.V. Holdings, Inc.*,
   390 B.R. 690 (Bankr. C.D. Cal. 2008)......................................................................................9

*In re Oklahoma Refining Co.*,
   838 F.3d 133 (10th Cir. 1988) .............................................................................................9, 10

*In re Philadelphia Athletic Club, Inc.*,
   15 B.R. 60 (Bankr. E.D. Pa. 1981) ..............................................................................9, 14, 15

*In re PRS Ins. Grp., Inc.*,
   274 B.R. 381 (Bankr. D. Del. 2001) .......................................................................................12

*In re Ridgemour Meyer Props., LLC*,
    413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008) ......................................................................... 12

*In re Russell*,
    60 B.R. 42 (Bankr. W.D. Ark. 1985) .................................................................................... 9

*In re V. Savino Oil & Heating Co.*,
    99 B.R. 518 (Bankr. E.D.N.Y. 1988) .................................................................................. 14

*Rivermeadows Assocs. Ltd.*,
    185 B.R. 615 (Bankr. D. Wyo. 1995) ................................................................................. 10

**FEDERAL STATUTES**

11 U.S.C. § 1104 ........................................................................................................... 1, 2, 10

11 U.S.C. § 1104(a) ........................................................................................................ 8, 10

Bankruptcy Code § 362(d)(3) ............................................................................................ 11

Bankruptcy Code § 1104(a)(1) ............................................................................... 9, 10, 13

Bankruptcy Code § 1104(a)(2) ..................................................................................... 14, 15

Equity security holders Lana Tsang ("L. Tsang") and Elaine Tsang ("E. Tsang" and together with L. Tsang, the "Tsangs") hereby respectfully file this Motion to Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104 ("Motion") over Gold River Valley, LLC ("Debtor").

## I. INTRODUCTION

This is a single asset real estate bankruptcy case filed by Debtor, an entity that was used as a vehicle to perpetrate a fraud against the Tsangs, creditors, and tenants who stand to have their leases eliminated. Contrary to Debtor's Resolution of Authorization and List of Equity Security Holders, which were both filed under penalty of perjury in this case, Sunshine Valley, LLC ("Sunshine Valley"), is not Debtor's sole member. Together, the Tsangs own a 40% membership interest in Debtor. These perjuries reflect the latest of a series of bad acts orchestrated by Debtor's principal, Benny Ko[1] ("Ko"), and non-member, third-party, Lucy Gao ("Gao"). As described in more detail below, throughout the last five years, Ko has perpetrated a fraudulent real estate investment scheme, causing over $3 million in damages to the Tsangs.

Ko creates entities for the purpose of buying distressed commercial real property through foreclosure sales. The Tsangs were solicited by Ko and his associates to contribute over $3 million combined for a combined 40% ownership interest in Debtor. Ko promised the contributions would be used to purchase, renovate, manage, and sell a 12-unit condominium project. Ko took the Tsangs' money, provided them an operating agreement for Debtor showing their combined 40% ownership interest, and even caused Debtor to issue Schedule K-1 forms that the Tsangs used in filing their tax returns.

Unbeknownst to the Tsangs, however, Ko and his cohorts later caused Debtor to take out a $4 million loan secured by Debtor's real property and sole asset, the 12-unit condominium project. In obtaining the loan, Ko and Gao presented a different story to the lender – that Debtor's sole and managing member was Gao. The Tsangs discovered the existence of the loan when the lender filed a complaint for judicial foreclosure and the appointment of a receiver. A receiver was appointed and the lender had a non-judicial foreclosure sale scheduled for January 20, 2015. The Petition was filed the last

---

[1] Ko is known by multiple other names, including Benjamin Kirk, Benny T. Ko, Benny Kirk, Tsu Ping Ko, Benn Ko, dba SJ 1077 LLC.

1 business day before the scheduled foreclosure sale.

2     Shocked at the fact that Debtor's sole asset was encumbered by a loan in excess of $4 million which was in default, the Tsangs sought copies of Debtor's books and records to understand to where their over $3 million in contributions went, as well as the purported loan proceeds. Despite their demands, the Tsangs have not been provided with all Debtor's books and records to which they are entitled and the question still remains: where did all the funds go? During the Tsangs' investigation, which is ongoing, other facts came to light regarding Ko's business practices and business judgment, including lawsuits against Ko and his associates that allege, among other things, fraud, misrepresentation, and even RICO violations relating to Ko and his associates' real estate schemes. A pattern has begun to emerge of Ko's fraud and dishonesty, raising serious doubts about Ko's ability to act as a fiduciary for the benefit of Debtor's estate, creditors and equity security holders.

    Additionally, Ko has significant experience in gathering investors to create entities in order to buy distressed real properties at steep discounts. There is a strong likelihood that Ko caused Debtor's bankruptcy filing simply to buy himself more time to pull together funding for a newly created Ko entity to purchase Debtor's real property either out of a foreclosure sale or by purchasing the lender's defaulted note and then foreclosing. This would wipe out all of the Tsangs' equity interests and constitutes a severe breach of fiduciary duty owed to the Tsangs. Ko could just as easily allow Debtor's sole asset to be once again subject to the lender's pending foreclosure sale by simply failing to file timely Schedules and a Statement of Financial Affairs and allowing the case to be dismissed or failing to file a confirmable plan of reorganization within the 90-day window for single asset real estate debtors and allowing the lender to get relief from stay. This would be a severe inequity to unsecured creditors and equity security holders, as there is at least over $3 million in equity in Debtor's property.

    These facts, taken together with the evidence presented below, demonstrate sufficient "cause" pursuant to 11 U.S.C. § 1104(a) to appoint a chapter 11 trustee. Ko has proven himself to be untrustworthy and unfit to manage the affairs of Debtor as a fiduciary for the benefit of creditors and equity security holders. He has lied to this Court, the lender, and who knows who else about Debtor's ownership. Ko will only seek to conceal his dissipation of Debtor's assets for his own benefit to the detriment of creditors and equity security holders. The integrity of the bankruptcy process demands that

2

MOTION TO APPOINT CHAPTER 11 TRUSTEE

18881423v.3

a chapter 11 trustee be appointed to this case and the Tsangs respectfully request that the Court do so and grant this Motion.

## II. STATEMENT OF FACTS

Further evidence in support of Creditor's Motion is contained in the accompanying Declarations of Elaine Tsang (the "Elaine Decl."), Lana Tsang (the "Lana Decl."), and Vivian F. Wang (the "Wang Decl."), and the accompanying Request for Judicial Notice ("RJN") all concurrently filed herewith.

**A. The Tsangs' Invest Over $3 Million in Exchange for a Combined 40% Membership Interest in Debtor.**

On or about June 2010, the Tsangs each entered into an agreement with Ko[2] to invest $1.5 million (for a total of $3 million) for a 20% interest (40% interest combined) in a California limited liability company that would acquire, renovate, and ultimately sell a 12-unit condominium complex commonly known as 650-652 S. Lake Avenue, Pasadena, California, 91106 (the "Property"). Elaine Decl. ¶¶ 3-4; Lana Decl. ¶¶ 3-4. According to Ko, the Tsangs' contributions would be used to purchase and renovate the Property for an eventual sale and pro rata share of the proceeds. *Id.*

The Tsangs frequently communicated with Ko's associates, including Vanessa Lavendera ("Lavendera") and Shelby Ho ("Ho"), regarding their investment and interests in Debtor. Elaine Decl. ¶ 5; Lana Decl. ¶ 5. Ko, Lavendera, and Ho told the Tsangs that Ko and his companies would acquire the Property through a foreclosure sale, renovate it, sell it, and then distribute pro rata shares of the proceeds to the members of the company, including the Tsangs. *Id.* Initially, Lavendera and Ho told the Tsangs that the company in which the Tsangs would own a membership interest and that would hold title to the Property would be named "662 Lake Pasadena LLC." *Id.* Later, the Tsangs were told that the company would be named "Liberty Gardens, LLC." *Id.* Ultimately, the Tsangs were informed that the company's name would be "Gold River Valley, LLC," which is the debtor and debtor-in-possession in this case *Id.*

Based their agreement with Ko and instructions conveyed to them by Ko's representative, Ho, on July 9, 2010, E. Tsang and L. Tsang each wired $1.5 million (for a total of $3 million) to an account held by Security Union Title Insurance Company. Elaine Decl. ¶ 6; Lana Decl. ¶ 6.

---

[2] Aka Benny T. Ko, aka Benny Kirk, aka Benjamin Kirk, aka Tsu Ping Ko, aka Benn Ko dba SJ 1077 LLC.

3

MOTION TO APPOINT CHAPTER 11 TRUSTEE

18881423v.3

Ko issued the Tsangs an unexecuted version of Debtor's Operating Agreement ("Debtor's Operating Agreement"), dated April 4, 2011. Elaine Decl. ¶ 7; Lana Decl. ¶ 7, Exhibit A. Debtor's Operating Agreement provides that the Tsangs each contributed $1.5 million (total $3 million) and each received a 20% membership interest (total 40%) in Debtor. *Id*. The remaining 60% interest was issued to Ko's Sunshine Valley, which according to Debtor's Operating Agreement, invested an initial capital contribution of $4.5 million. *Id*.[3] As set forth in Debtor's Operating Agreement, Debtor's purpose is to "repair, renovate, and manage the re-sale of all twelve (12) units" of the Property. *Id*. The Debtor's Operating Agreement also designated North America Asset Management Corporation ("N.A. Asset Management") as its manager. *Id*. Pursuant to Debtor's Articles of Organization that Ko provided to the Tsangs, Debtor was to be managed by one manager, which the Debtor's Operating Agreement identified as N.A. Asset Management. Elaine Decl. ¶ 8; Lana Decl. ¶ 8, Exhibit B.

By that certain Grant Deed dated March 30, 2011, and recorded in Official Records of Los Angeles County on April 4, 2011, as Instrument No. 20110494633, Debtor obtained title to the Property from Liberty Gardens, LLC. RJN, ¶ 1, Exhibit 1.

On or around January 2012, Ko provided and requested that the Tsangs execute a "Disclosure Acknowledgement and Commitment to Purchase and Sell Real Property Agreement" (the "Property Purchase Agreement"), which the Tsangs executed. Elaine Decl., ¶ 9; Lana Decl., ¶ 9; Exhibit C. The Property Purchase Agreement, which is dated June 29, 2010, provides that Liberty Asset Management Company ("Liberty Asset Management") would purchase and then sell the Property to Debtor for $7.5 million. *Id*. The Property Purchase Agreement also sets forth Debtor's members as the Tsangs and Sunshine Valley and their respective contributions. *Id*.

Also, on or around January 2012, Ko and/or his associates requested that Debtor's members make an additional contribution to Debtor pursuant to the Debtor's Operating Agreement for costs associated with the management and care of the Property in an amount totaling $280,743.64. Elaine Decl. ¶ 10; Lana Decl. ¶ 10, Exhibit D. The Tsangs' portion of this requested contribution was

---

[3] The Tsangs were also provided operating agreements identifying the entity as "662 Lake Pasadena, LCC" and "Liberty gardens, LLC," which similarly identified the Tsangs' collective contribution as $3,000,000 and their membership interest as 40%. However, these documents identified Sunshine Valley's initial contribution as only $1,500,000 and its membership interest as 20% and identified The Albert Jason Wang Trust as the remaining 40% member, which an initial capital contribution of $3,000,000. Elaine Decl. ¶ 7, fn. 1; Lana Decl. ¶ 7, fn. 1.

4

MOTION TO APPOINT CHAPTER 11 TRUSTEE

18881423v.3

$56,148.73 each (total $112,297.46). *Id.* Pursuant to this request, on January 20, 2012, the Tsangs each made an additional contribution of $56,148.73, bringing their total contribution to $1,556,148.73 each (for a combined total of $3,112,297.46). *Id.*

At all times herein the Tsangs believed themselves to be members of Debtor. Elaine Decl. ¶ 11; Lana Decl. ¶ 11. The Tsangs received copies of Schedule K-1 tax forms for their membership interests in Debtor and filed their tax returns based on the Schedule K-1s received. *Id.*, Exhibit E.

Finally, Ko himself has sworn under oath that the Tsangs are members of Debtor, as discussed below, in separate litigation.

**B.    Discovery of Ko's Fraud and Dishonesty as to Debtor**

In or around July 2014, the Tsangs discovered that Lone Oak Fund, LLC ("Lone Oak") had filed a verified complaint (the "Complaint") against Debtor in the Los Angeles County Superior Court, Central Division, entitled *Lone Oak Fund, LLC v. Gold River, LLC*, Case No. BC552238 (the "Judicial Foreclosure Action"), seeking, *inter alia*, judicial foreclosure of the Property and the appointment of a receiver. Elaine Decl. ¶ 12; Lana Decl. ¶ 12; RJN ¶ 2, Exhibit 2.

According the Complaint and its accompanying exhibits, Debtor had apparently obtained a loan (the "Loan") from Loan Oak in the original principal amount of $3,950,000.00. RJN ¶ 2, Exhibit 2. The Loan was evidenced by a promissory note (the "Note") dated as of September 16, 2011, executed by Lucy Gao ("Gao") as "Managing Member" of Debtor. *Id.* The repayment of the Note was secured by a Deed of Trust with Absolute Assignment of Leases and Rent, Security Agreement and Fixture filing (the "Deed of Trust"), which was recorded against the Property in the Official Records of Los Angeles County as Instrument No. 2011-1281776 on September 21, 2011. *Id.*

The Complaint further alleged that Debtor entered in a loan modification agreement (the "Loan Modification Agreement") with Lone Oak on or about September 13, 2012, pursuant to which Debtor and Lone Oak extended the maturity date of the Note to September 30, 2013, and increased the interest rate to 9.30% as of April 1, 2013. *Id.* Additionally, according to the Complaint, Debtor and Lone Oak entered into a two forbearance agreements. *Id.* Pursuant to the first forbearance agreement dated as of November 7, 2012 (the "First Forbearance Agreement"), Lone Oak agreed forbear from exercising its rights and remedies under the various loan documents with Debtor to October 31, 2013, provided that

5

MOTION TO APPOINT CHAPTER 11 TRUSTEE

18881423v.3

Debtor was in compliance with the terms of the First Forbearance Agreement. Pursuant to the second forbearance agreement dated as of November 6, 2013 (the "Second Forbearance Agreement"), Lone Oak agreed forbear from exercising its rights and remedies under the various loan documents with Debtor to April 30, 2014.[4] *Id.*

Prior to the Judicial Foreclosure Action, the Tsangs had no knowledge of the Loan, the Note, the Deed of Trust, the Loan Modification Agreement, the First Forbearance Agreement or the Second Forbearance Agreement (together the "Loan Documents"). Elaine Decl. ¶ 15; Lana Decl. ¶ 15. The Tsangs have no knowledge why Gao signed the Loan Documents as Debtor's managing member. *Id.* The Debtor's Operating Agreement provided that Debtor was to be managed by N.A. Asset Management, its only members were the Tsangs and Sunshine Valley, and additional members to Debtor required the written consent of all then existing members. *Id.* The Tsangs have never consented to add additional members to Debtor or to alienate in any way all or any part of their membership interests in Debtor. *Id.* The Tsangs have also never provided consent to change Debtor's manager, N.A. Asset Management. *Id.*

Unaware Debtor had obtained a loan, after learning that Lone Oak filed the Judicial Foreclosure Action to foreclose on the Property, the Tsangs sought to review the books and records of Debtor in an effort to protect their membership interests Debtor and determine whether the proceeds of the Loan benefited Debtor. Elaine Decl. ¶ 16; Lana Decl. ¶ 16. While Ko, through his counsel, has provided the Tsangs some documents related to the Loan, he has failed and refused to provide copies of all records that Debtor was required to maintain and furnish the Tsangs as members of Debtor. *Id.*

Following the discovery of the Judicial Foreclosure Action and Gao's claim to be the managing member of Debtor, the Tsangs began an investigation. They discovered that Debtor had provided Lone Oak with a different operating agreement dated August 19, 2010 (the "Second Operating Agreement") than the Debtor's Operating Agreement, which Ko provided to the Tsangs. RJN ¶ 3, Exhibit 3 at ¶ 7, Ex. 7. Pursuant to the Second Operating Agreement, Gao is shown as the sole member of Debtor and the managing member of Debtor. *Id.*

---

[4] The Complaint states that Lone Oak agreed to forbear under the loan documents until April 30, 2013, but the Second Forbearance Agreement attached as Exhibit F to the Complaint states the agreement was for Lone Oak to forbear until April 30, 2014.

6

MOTION TO APPOINT CHAPTER 11 TRUSTEE

18881423v.3

Contrary to what Ko and Gao provided to Lone Oak in making the Loan, Ko claims under oath that the Tsangs are members of Debtor. Wang Decl., ¶¶ 4-5. On December 22, 2014, Ko verified supplemental responses to form interrogatories (the "Verified Supplemental Interrogatory Responses") in the action pending in the Santa Clara County Superior Court, entitled *ELSV, LLC v. Benny Ko, et al.*, Case No. 1-13-CV-254835.[5] *Id.* at ¶ 4, Exhibit C.

Even in filing Debtor's voluntary chapter 11 bankruptcy petition ("Petition"), Ko has taken another position on Debtor's ownership interest. The Petition was signed by Ko as its "authorized agent." (Doc. No. 1). Attached to the Petition was Debtor's resolutions authorizing the filing of the Petition, which are signed by Ko, on behalf of Sunshine Valley, as managing and sole member of Debtor. *Id.* This is position conflicts with what Ko stated under penalty of perjury one month ago in his Verified Supplemental Interrogatory Responses.

**C.    Appointment of Receiver, Non-Judicial Foreclosure Sale, & Debtor's Bankruptcy**

On September 2, 2014, the Los Angeles County Superior Court entered an order appointing Kevin Singer as receiver over the Property in the Judicial Foreclosure Action. RJN, ¶ 5, Exhibit 5. Lone Oak also had a non-judicial foreclosure sale of the Property scheduled January 20, 2015, which prompted the filing of the Petition. RJN, ¶ 6, Exhibit 6. The notice of Lone Oak's non-judicial foreclosure sale states that the total amount outstanding under the Loan as of the date of its publication was $5,293,340.00. *Id.*

According to the docket in this case, as of January 30, 2015, Debtor has not taken action to regain possession of the property, displace receiver, use cash collateral, offer adequate protection to Lone Oak, filed Schedules or a Statement of Financial Affairs, or other acts expected as a fiduciary.

There is substantial equity in the Property. Elaine Decl. ¶ 17; Lana Decl. ¶17. The Tsangs obtained an appraisal (the "Appraisal") dated as of October 31, 2014, which values the Property at an aggregate retail value of $11,450,000, and an as-is bulk value as $8,600,000. *Id.*, ¶ 17; Exhibit F.

---

[5] The Tsangs are members in ELSV, LLC, which has filed suit against Ko, Gao, and others in the Santa Clara County Superior Court as Case No. 1-13-CV-254835, entitled *ELSV, LLC v. Benny Ko, et al.* Wang Decl. ¶ 2, Exhibit A. This action alleges causes of actions against the defendants, including Ko, for, *inter alia*, breach of contract, negligence, fraud, unjust enrichment, etc. relating to the sale of membership interests with Ko's entities that were to acquire, manage and sell distressed other real estate properties.

**D.    Other Lawsuits Alleging Similar Bad Acts Against Ko, Gao and Others**.

The Tsangs also discovered that Ko, Gao, Ho and their entities have become embroiled in legal problems as a result of their underhanded business practices. On March 1, 2014, Jennifer Lee filed an class action complaint against Ko, Gao, Ho, Lavandera, Liberty Asset Management, and two other affiliated entities in the United States District Court for the Northern District of California, San Jose Division, entitled *Jennifer Lee v. Shelby Ho, et al.*, Case No. 5:14-cv-01127-BLF (the "Lee RICO Fraud Action"). Lee's complaint alleges that defendants engaged in RICO violations, securities fraud, conversion, intentional and negligent misrepresentation, conversion, and other unlawful activities in connection with defendants' sale of membership interests in limited liability companies that were to acquire and hold real property for investment purposes. RJN ¶ 6, Exhibit 6.

A search of public records shows a similar lawsuit alleging fraud and conspiracy filed on November 17, 2014, by Jin Jun Huang against Lucy Gao, Sunshine Fields LLC and Arthur Wang in the Los Angeles Superior Court, Case No. KC067288 (the "Huang Fraud Action"). RJN ¶ 7, Exhibit 7.

### III.    ARGUMENT

**A.    The Standards Governing the Appointment of a Chapter 11 Trustee**

Section 1104(a) of the Bankruptcy Code is phrased in the disjunctive, providing two separate tests for a court to consider in determining whether to appoint a trustee. Both subsections provide an independent basis for the appointment of a trustee. *In re Lowenschuss*, 171 F.3d 673, 685 (9th Cir. 1999). Bankruptcy Code § 1104(a) provides as follows:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

The list for "cause" found in Section 1104(a) supporting the appointment of a trustee is not

8
MOTION TO APPOINT CHAPTER 11 TRUSTEE
18881423v.3

exhaustive. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 472 (3d Cir. 1998) (The word "includes" in subsection (a)(1) indicates that the examples of cause are not exclusive). Thus, a Court that does not find one of the grounds specifically enumerated in Section 1104(a)(1) may still find that cause exists to appoint a trustee. *See, e.g., In re Oklahoma Refining Co.*, 838 F.3d 133 (10th Cir. 1988). If the Court determines that cause exists under Section 1104(a)(1), there is no discretion and an impartial trustee must be appointed. *In re Russell*, 60 B.R. 42, 45 (Bankr. W.D. Ark. 1985).

A chapter 11 debtor and its managers owe fiduciary duties to the debtor's estate and its creditors. *In re Centennial Textiles, Inc.*, 227 B.R. 606, 612 (S.D.N.Y. 1998). "[I]t is incumbent on the court to seek to protect the interests of equity holders as well." *In re Philadelphia Athletic Club, Inc.*, 15 B.R. 60, 62 (Bankr. E.D. Pa. 1981). "As fiduciaries, the debtor in possession and its managers are obligated to treat all parties to the case fairly, maximize the value of the estate, and protect and conserve the debtor's property." *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 699 (Bankr. C.D. Cal. 2008) (internal citations omitted; citing *In re Centennial Textiles, Inc.*, 227 B.R. at 612). "In the appropriate case, the appointment of a trustee is a power which is crucial for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000). Where there is doubt about management's ability to carry out its fiduciary duties, appointment of a trustee is the appropriate remedy. *See, e.g., In re Morpheus Lights, Inc.*, 228 B.R. 449, 454 (Bankr. N.D. Cal. 1998) (citations omitted).

Ko has demonstrated he is unfit to manage Debtor in this bankruptcy case. He has not been honest in managing Debtor's affairs and much mischief has transpired under his watch. He has told this Court one story regarding Debtor's membership and another to Lone Oak. None are consistent with what he led the Tsangs to believe or stated under penalty of perjury in his Verified Supplemental Interrogatory Responses. There are also serious questions over Ko's use of Debtor's funds provided by the Tsangs and through the Loan secured by the Property. According to the docket in this case, Ko has not undertaken any other acts expected of a fiduciary, such as filing Schedules, Statement of Financial Affairs, motion to extend filing deadlines, motion for cash collateral use, motion for adequate protection payment, etc. There is also no indication that he has demanded turnover from the receiver appointed in the Judicial Foreclosure Action.

1    Ko is not fulfilling his fiduciary duties on Debtor's behalf and cannot be trust to do so going

2 forward.  His management of Debtor only threatens the integrity of the bankruptcy process in this case.

**B.    "Cause" Exists to Appoint a Chapter 11 Trustee Under Section 1104(a)(1) for Ko's Fraud, Dishonesty, and Conflicts of Interest with Debtor**

"Cause" exists to appoint a chapter 11 trustee in this case under Bankruptcy Code § 1104(a)(1) because of Ko's fraud, dishonesty, and conflicts of interest with Debtor.  A determination of "cause" under Bankruptcy Code § 1104(a) "is within the discretion of the court [based on] various interests involved in the bankruptcy proceeding." *In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (Bankr. N.D. Ill.), *aff'd, Bellevue Place Assocs. V. Caisse Centrale Des Banques Populaires*, No. 94-C-5089, 1004 U.S. Dist. LEXIS 17409 (N.D. Ill. Dec. 6, 1994); *see also Comm. of Dalkon Shield Claimants v. A.H. Robins Co. Inc.*, 828 F.2d 239, 242 (4th Cir. 1987).  For example, the Court may consider pre-petition activity as part of its section 1104 determination.  *See In re Oklahoma Refining Co.*, 838 F.3d at 1136; *see also Rivermeadows Assocs. Ltd.*, 185 B.R. 615, 619 (Bankr. D. Wyo. 1995) ("the [Bankruptcy] Code is clear that prepetition conduct of the debtor's management may be the sole deciding factor").  Once "cause is found by a court, the appointment of a trustee under Bankruptcy Code § 1104(a)(1) is mandatory. *See Rivermeadows Assocs.*, 185 B.R. at 617.

Section 1104(a)(1) of the Bankruptcy Code specifically provides that "cause" includes "fraud" and "dishonesty."  Courts also consider the existence of other factors including, without limitation: (1) conflicts of interest, including inappropriate relations between corporate parents and subsidiaries; (2) misuse of assets and funds; (3) inaccurate and inadequate record keeping and reporting; (4) non-filing of required documents, including lack of adequate disclosure; (5) various instances of conduct found to establish fraud or dishonesty; (6) failure to make required payments; (7) lack of credibility and creditor confidence; and (8) extreme acrimony and deep-seated animosity among the debtors and their creditors. *In re Clinton Centrifuge, Inc.*, 885 B.R. 980, 985 (Bankr. E.D. Pa. 1988).  Most of these factors are met here.

**1.    Ko's Conflicts of Interest**

Ko's practice of creating entities to purchase distressed real estate through a foreclosure process raises concerns of his conflicts and ability to act a fiduciary.  "Equally troubling is when the debtor's

10

MOTION TO APPOINT CHAPTER 11 TRUSTEE

18881423v.3

management uses a nondebtor entity to divert property of the estate so that it is no longer available for creditors. When that occurs, courts have been quick to appoint a trustee in order to prevent further dissipation of assets and to insure recovery of those assets already transferred." *In re Clinton Centrifuge, Inc.*, 885 B.R. at 985. Ko has lured unsuspecting investors into investing in his various LLCs for the purpose of buying distressed properties out of foreclosure only to allow these properties to become the subject of foreclosure later. There is a serious risk that Ko will allow the Property to be subject once again to Lone Oak's pending non-judicial foreclosure so that a newly created Ko entity can buy the Property at a steep discount, wiping out any equity interests the Tsangs have. This case can be dismissed if Ko fails to timely file Debtor's required Schedules, Statement of Financial Affairs, and other required documents, or Lone Oak can obtain relief from the automatic stay under Bankruptcy Code § 362(d)(3) if Ko fails to file a confirmable plan within the 90-day window allocated for a single asset real estate debtors.

According the docket, Ko has not filed Schedules, Statement of Financial Affairs, or a motion to extend such deadlines. It does not appear that Ko has made any efforts to regain control of the estate property from the receiver and rents for February are coming due. It further does not appear that he has offered adequate protection payments to Lone Oak. Ko is failing to conduct himself as a reasonable fiduciary. Taken as a whole, it appears that the bankruptcy was filed for delay and nefarious purposes.

### 2. **Ko's Misuse of Assets and Funds**

Another factor justifying the appointing of a chapter 11 trustee is that a trustee is needed to determine whether the proceeds of the Loan were used for Debtor's benefit or simply enriched Ko, Gao, or others at Debtor's and the Tsangs' expense. Ko cannot be expected to pursue claims on Debtor's behalf against himself, his business partner, Gao, or any of their affiliated entities. This also supports the above factor on Ko's conflicts of interest.

Courts in this circuit have observed that:

> [a]s a practical matter, bankruptcy law views the management of a debtor as a neutral party who is the maximizer of value for all parties-in-interest… However, in some cases, management of the debtor is not a neutral party and has its own agenda. This is especially true when the debtor is called upon to recover assets of the estate in the form of claims against current management.

11

MOTION TO APPOINT CHAPTER 11 TRUSTEE

18881423v.3

*Variable-Parameter Future Dev. Corp. v. Comerica Bank-Cal. (In re Morpheus Lights, Inc.)*, 228 B.R. 449, 454 (Bankr. N.D. Cal. 1998) (citation omitted). In such cases, appointment of a trustee is often the proper remedy. *See id.* For example, in *In re Ridgemour Meyer Props., LLC*, the court found that appointment of a chapter 11 trustee was warranted because debtor's principal was "not a trustworthy fiduciary" and could not be counted on to "conduct independent investigations [on behalf of the estate] of questionable transactions in which [he was] involved." 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008). *See also In re PRS Ins. Grp., Inc.*, 274 B.R. 381 (Bankr. D. Del. 2001) (grounds exist for appointment of chapter 11 trustee where it was "unrealistic" to assume that the debtor would pursue causes of action against the principal if he controlled debtor).

It is similarly unrealistic to expect that Ko would pursue or even consider pursuing claims belonging to Debtor's estate against himself, Gao, or any of their entities. He has refused to allow the Tsangs access to all Debtor's books and records to which they are entitled as members to determine how Debtor's millions in funds were used. There are serious concerns that Ko and/or his affiliates siphoned millions of dollars from Debtor that were originally provided by the Tsangs and the Loan. A chapter 11 trustee is needed to fairly and independently evaluate where these monies went. Ko cannot be relied upon to undertake such an unbiased investigation.

### 3.    **Various Instances of Conduct Found to Establish Fraud or Dishonesty**

There are numerous instances in this case demonstrating Ko's fraud and/or dishonesty to justify the appointment of a chapter 11 trustee. Ko has told different stories to this Court, creditors, and Debtor's equity interest holders regarding the true management and equity interests of Debtor. In support of the Petition, Ko submitted Debtor's resolutions purporting to be, on behalf of Sunshine Valley, the sole and managing member of Debtor. Yet, he led the Tsangs to believe their millions of dollars in contributions were for their membership interests in Debtor by (i) providing the Tsangs the Debtor's Operating Agreement, (ii) causing Debtor to issue the Tsangs Schedule K-1 forms which the Tsangs used in preparing their tax returns, and (iii) stating under penalty of perjury in the Verified Supplemental Interrogatory Responses that the Tsangs were members of Debtor. But then, Ko caused or allowed the Second Operating Agreement to be submitted to Lone Oak showing Gao as the sole and managing member. He has never maintained a consistent story and cannot be trusted to do so now.

Ko also failed to disclose to the Tsangs the existence of the Loan and Debtor's financial distress evidenced by the modifications and forbearance agreements to the Loan. Moreover, the Tsangs have not received copies of all Debtor's books and records as requested in order to determine where the proceeds of the Loan and their investment in Debtor went. This raises further suspicion that these monies were not used for Debtor's benefit but instead for the benefit of Ko or his affiliates. Diversion of funds and misuse of corporate assets also constitute fraud or dishonesty sufficient to warrant appointment of a trustee under section 1104(a)(1). *See, e.g.*, *In re Bibo, Inc.*, 76 F.3d 256, 257-58 (9th Cir. 1996) (appointment of a trustee was mandated where management had siphoned funds from the debtor through kickbacks).

### 4. Lack of Credibility and Creditor Confidence

Ko's dishonesty is enough to undermine his credibility in this case. Under his watch, much mischief has occurred. As previously discussed, he has failed to take the basic steps necessary to protect Debtor's interests, such as regaining control over Debtor's property, filing Schedules and a Statement of Financial Affairs, arranging use of cash collateral, etc. As if that was not enough, the existence of the Lee RICO Fraud Action and Huang Fraud Action against Ko and Gao brought by other individuals defrauded by Ko and Gao through their various real estate schemes further erodes what little confidence there is in Ko's ability to manage Debtor's affairs as a fiduciary.

It is also troubling that Ko has penchant for creating entities to purchase distressed real estate through a foreclosure process. This highlights further conflicts he has and raises concerns about his ability to act as a fiduciary. "Equally troubling is when the debtor's management uses a nondebtor entity to divert property of the estate so that it is no longer available for creditors. When that occurs, courts have been quick to appoint a trustee in order to prevent further dissipation of assets and to insure recovery of those assets already transferred." *In re Clinton Centrifuge, Inc.*, 885 B.R. at 985. As previously mentioned, a legitimate concern exists that Ko may let this bankruptcy case be dismissed or allow Lone Oak to obtain relief from stay simply from his own inaction in this case in order to allow a new entity purchase the Property at a steep discount through the foreclosure process.

Allowing a debtor to remain in control of its business during a bankruptcy filing is "premised upon an assurance that the officers and managing employees can be depended upon to carry out the

13

MOTION TO APPOINT CHAPTER 11 TRUSTEE

18881423v.3

fiduciary responsibilities of a trustee." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985). Ko cannot be trusted to carry out his fiduciary duties to the estate, creditors and equity interest holders and that the appointment of a chapter 11 trustee in this case is more than justified.

**C.    Further Support for Appointment of Chapter 11 Trustee Exists Under Section 1104(a)(2)**

Section 1104(a)(2) of the Bankruptcy Code provides a "flexible standard for appointment of a trustee even when no cause exists." *See Bellevue Place Assocs.*, 171 B.R. at 623; *see also In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 527 fn.11 (Bankr. E.D.N.Y. 1988) ("factors constituting a basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion."). The standard affords the Bankruptcy Court "particularly wide discretion" to look to the practical realities and necessities involved in appointing a trustee. *See Bellevue Place Assocs.,* 171 B.R. at 623. Factors often used to determine whether appointment of a chapter 11 trustee is in the creditors and equity security holders' best interests include:  (1) the debtor's trustworthiness; (2) the debtor's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence, or lack thereof, of the business community and creditors in present management; and (4) the benefits derived by the trustee's appointment, balanced against the cost of appointment. *See In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990); *In re Madison Mgmt. Group, Inc.*, 137 B.R. 275, 282 (Bankr. N.D. Ill. 1992).

*In re Philadelphia Athletic Club, Inc.*, *supra*, 15 B.R. 60, is illustrative. There, a dispute arose over the equity security interests of the debtor between the debtor's majority interest holder who controlled the debtor and the debtor's minority interest holders. The majority interest holder claimed the minority interest holders no longer held their interests in the debtor. The minority interest holders asserted otherwise. The court found the appointment of an impartial chapter 11 trustee appropriate because the debtor's majority interest holder ultimately intended to obtain sole ownership of debtor and the purpose of filing the chapter 11 bankruptcy was to eliminate the interests of the minority interest holders. *Id.* at 62. The court found that:

> Although the primary purpose of the bankruptcy courts is to preserve the debtor's estate in order to protect its creditors, where, as here, the rights of all creditors are fully protected, it is incumbent on the court to seek to protect the interests of the equity holders as well. This is clear,

14

MOTION TO APPOINT CHAPTER 11 TRUSTEE

18881423v.3

particularly in the case of the appointment of a trustee. ***Section 1104(a)(2) states that the court shall appoint a trustee if it is in the interests*** of creditors, ***of any equity security holders*** or of any other interests of the estate.

*Id.* (emphasis added).

There is sufficient equity in the Property. Even using the most conservative valuations from the Appraisal, there is still over $3 million in equity remaining after the Loan is paid in full. The Tsangs are entitled to the protection of their equity interests.

Debtor lacks trustworthiness and credibility under Ko's management. His motives are suspect, and he has proven himself unfit to represent not only the best interest of creditors but also equity security holders. Ko has told inconsistent stories regarding Debtor's ownership to different parties throughout Debtor's existence and cannot account for the use of Debtor's funds. Ko has not taken any action since the Petition to protect Debtor's interests. The Appraisal indicates there is substantial equity in the Property after the Loan is paid in full, which supports protecting the interests of equity security holders, such as the Tsangs. A chapter 11 trustee must be appointed in order to protect these interests and uphold the integrity of the bankruptcy process.

## IV.    CONCLUSION

For all of the foregoing reasons, the Motion should be granted and a chapter 11 trustee should be appointed. This Debtor needs an independent fiduciary to make appropriate business decisions which will hopefully lead to a successful reorganization, payment in full to all of Debtors creditors, and a return to equity security holders.

DATED: January 30, 2015                    SEYFARTH SHAW LLP


                                           By: */s/ Marianne M. Dickson*
                                               Marianne M. Dickson

                                           Attorneys for Equity Security Holders
                                           Lana and Elaine Tsang