DAVID B. GOLUBCHIK (State Bar No. 185520)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: DBG@LNBYB.com; JSK@LNBYB.COM

Proposed Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) Case No.: 2:15-bk-10691-TD |
| | ) |
| GOLD RIVER VALLEY, LLC, | ) |
| | ) Chapter 11 Case |
| Debtor and Debtor in Possession. | ) |
| | ) **APPLICATION OF DEBTOR AND** |
| | ) **DEBTOR IN POSSESSION TO** |
| | ) **EMPLOY KELLER WILLIAMS SANTA** |
| | ) **MONICA/ PACIFIC PALISADES AS** |
| | ) **REAL ESTATE BROKER PURSUANT** |
| | ) **TO 11 U.S.C. §§ 327(a) AND 328;** |
| | ) **DECLARATION OF LULU** |
| | ) **KNOWLTON IN SUPPORT THEREOF** |
| | ) |
| | ) [No Hearing Required Unless Requested |
| | ) Pursuant to Local Bankruptcy Rule 2014-1] |
| | ) |

1

Gold River Valley, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case, hereby submits this application (the "Application") for Court approval of its employment of Keller Williams Santa Monica/ Pacific Palisades ("Keller Williams") as its real estate broker, effective as of February 16, 2015, upon the terms and conditions described below.   In support of this Application, the Debtor respectfully represents as follows:

**A.     Background**

1.      The Debtor commenced its chapter 11 bankruptcy case by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code, (the "Bankruptcy Code") on January 16, 2015 (the "Petition Date").

2.      No committee of unsecured creditors has been formed, and no trustee has been appointed.

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The Debtor's primary asset is real property located at 650-652 S. Lake Avenue, Pasadena, California 91105 (the "Property").   The Property consists of twelve luxury condominium units (the "Condominium Units"), each ranging in size from 1,340 to 2,120 square feet, and is in the prestigious South Lake community of Pasadena and within minutes of the Rose Bowl, the Huntington Library and Gardens, and the Norton Simon Museum.  Several of the Condominium Units have private elevators and a sweeping view of the San Gabriel Mountains.  Currently, ten of the twelve Condominium Units are being rented by tenants.

5.      The Property is encumbered by statutory senior secured property taxes of approximately $30,800.  As described more fully below, this bankruptcy was filed, in part, to stop the foreclosure attempts by Lone Oak Fund, LLC ("Lone Oak") who holds a first priority lien in the principal amount of $3,750,000.  Finally, Elaine and Lana Tsang (the "Tsangs") have

1   each recorded a lis pendens against the Property in the amount of $1,556,148.37, for an

2   aggregate alleged amount of approximately $3.1 million.

3        6.     Prior to the bankruptcy filing, in 2011, the Debtor borrowed approximately

4   $3,750,000 from Lone Oak.  The Debtor executed a senior deed of trust in favor of Lone Oak to

5   secure such obligation.  Based on unforeseen circumstances, the Debtor was unable to satisfy the

6   obligation of the non-debtor entity and defaulted on the loan.  As a result, Lone Oak commenced

7   receivership and foreclosure proceedings against the Debtor in state court, and obtained an order

8   appointing a receiver over the Property on September 2, 2014.  On September 19, 2014, Lone

9   Oak caused a notice of default and election to sell under deed of trust (the "<u>Notice of Default</u>") to

10   be issued and recorded in the Los Angeles County recorder's office against the Property.  On

11   December 23, 2014, Lone Oak caused a notice of trustee sale under the deed of trust (the "<u>Notice</u>

12   <u>of Sale</u>") to be issued against the Property.  The trustee sale was scheduled to take place on

13   January 20, 2015.  An agreement to delay or withdraw the foreclosure sale was not reached.

14        7.     The Debtor believes that the current fair market value of the Property is

15   approximately $12 million, while the total asserted debt is under $9 million.     In order to

16   preserve the Property and its value for the benefit of all creditors and equity holders, this

17   bankruptcy was commenced on January 16, 2015.  Through this bankruptcy, the Debtor seeks to

18   promptly reorganize its financial affairs for the benefit of all creditors of its estate by way of a

19   sale of the Property under section 363 of the Bankruptcy Code and a chapter 11 plan.

20   **B.**    **Employment of Real Estate Broker**

21        8.     The Debtor seeks to maximize value for its estate by selling the Property in a

22   Bankruptcy Code § 363 sale.  To this end, the Debtor requires the employment of a real estate

23   broker to market the Property for sale in a professional manner and maximize the recovery for

24   the estate.  On or about February 16, 2015 the Debtor signed a listing agreement (the

25   "<u>Agreement</u>") with Keller Williams, which has an effective date of February 16, 2015.  A true

26   and correct copy of the Agreement is attached as Exhibit "1" hereto.

27

28

9.      The Debtor selected Keller Williams because of its reputation, expertise, and experience in the greater Los Angeles residential real estate market.  The Debtor specifically seeks the assistance of Lulu Knowlton for this engagement.  Ms. Knowlton has several years of residential real estate experience and specializes in the leasing and selling of upscale residential homes and condominiums.  A true and correct copy of Ms. Knowlton's resume is incorporated in Exhibit "2" hereto.

10.     The Debtor requires the assistance of a real estate broker to provide the following services:

a.  To advertise and market the Property to interested parties;

b.  To show the Property to interested parties;

c.  To represent the estate as sellers in connection with the sale of the Property;

d.  To advise the Debtor with respect to obtaining the highest and best offers available in the present market for the Property; and

e.  To do such other things as necessary in the context of the employment as real estate broker herein.

**D.      <u>Compensation</u>**

11.     By this Application, the Debtor seeks to employ Keller Williams as its real estate broker pursuant to 11 U.S.C. § 327(a) at the expense of the Debtor's bankruptcy estate with compensation to be paid from the sale proceeds pursuant to 11 U.S.C. § 328, without the need for a further application for compensation.

12.     Below is a summary of the most salient terms of the Agreement attached as Exhibit "1" hereto:

(a) The Property may be marketed and sold as twelve (12) separate units or, alternatively, as an entire project.

(b) In the event of a sale of the Property as an entire project, the sale price shall be ten million and five hundred thousand dollars ($10,500,000), or such other price and terms as the Debtor may agree to.

(c) If the sale price of the Property as an entire project is less than $8,000,000, Keller Williams shall be paid a commission equal to five percent (5%) of the gross sale price.

(d) If the sale price of the Property as an entire project is more than $8,000,000, Keller Williams shall be paid a commission equal to four percent (4%) of the gross sale price.

(e) In the event of a sale of the Property to the Tsangs, Keller Williams will not be paid any commission.

(f) The individual listing prices for each Condominium Unit shall be in the amounts listed in Addendum One annexed to the Agreement, or such other price and terms as the Debtor may agree to.

(g) Disputes between the Debtor and Keller Williams will be resolved by mediation or binding arbitration.

(h) If Keller Williams finds a prospective purchaser for the Property, Keller Williams may also represent and act as the agent for such purchaser. The Debtor authorizes and consents to such dual agency, subject to Bankruptcy Court approval.

(i) The Debtor agrees to indemnify, defend, and hold Keller Williams harmless for all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect information supplied by the Debtor, or from any material facts that the Debtor knows but fails to disclose, subject to Bankruptcy Court approval.

13. Keller Williams is not a creditor, an equity security holder or an insider of the Debtor.

14. Keller Williams is not and was not an investment banker for any outstanding security of the Debtor. Keller Williams has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

15.    Neither Keller Williams nor any member of Keller Williams is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

16.    As set forth in the annexed Knowlton Declaration, to the best of Keller Williams's knowledge, Keller Williams does not hold or represent any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

17.    To the best of the Debtor's knowledge, and based upon the annexed Knowlton Declaration, the Debtor believes that Keller Williams is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code.  As stated in the Knowlton Declaration, neither Keller Williams nor any person employed by Keller Williams has any connection with the estate, any insider of the Debtor, or any other related entities in which the estate may have an interest.  Further, as stated in the Knowlton Declaration, neither Keller Williams nor any person employed by Keller Williams represents any other entity having an adverse interest to the estate or any creditor.

18.    Keller Williams understands the provisions of 11 U.S.C. §§ 327, 328, 330 and 331 which require, among other things, Court approval of the Debtor's employment of Keller Williams as its real estate brokers and of the commission that Keller Williams will receive upon the sale of the Property.  Pursuant to this Application, and in accordance with 11 U.S.C. § 328(a), the Debtor seeks Court authority to pay to Keller Williams its commission, if a sale occurs, from the proceeds of the sale without the need for a fee application and hearing thereon.

19.    The Debtor believes that the employment of Keller Williams upon the terms and conditions set forth above is in the best interests of the estate.

///

///

///

1    **WHEREFORE**, the Debtor respectfully requests that the Court approve the Debtor's

2    employment of Keller Williams as its real estate broker, effective February 16, 2015, upon the

3    terms and conditions set forth above.

4    Dated: March 4, 2015                    GOLD RIVER VALLEY, LLC,

5

6

7                                            By:    BENJAMIN KIRK

8                                            Its:    Authorized Agent

9

10   Submitted by:

11   LEVENE, NEALE, BENDER,
     YOO & BRILL, L.L.P.

12

13

14   By: /s/ Jeffrey S. Kwong
         _____
15       DAVID B. GOLUBCHIK
         JEFFREY S. KWONG
16   (Proposed) Attorneys for Chapter 11 Debtor
     and Debtor in Possession

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF LULU KNOWLTON

I, Lulu Knowlton, HEREBY DECLARE AS FOLLOWS:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am a realtor of Keller Williams Santa Monica/ Pacific Palisades ("Keller Williams") ("Keller Williams").

3.      I make this declaration in support of the Application to which it is attached. Unless otherwise stated with specificity or implied by context, capitalized defined terms used herein have the same meanings as ascribed to them in the Application.

4.      The Debtor requires the employment of a real estate broker to market the Property for sale in a professional manner and maximize the recovery for the estate.  On or about February 16, 2015, the Debtor signed a listing agreement (the "Agreement") with Keller Williams.  A true and correct copy of the Agreement is attached as Exhibit "1" hereto.

5.      The Debtor selected Keller Williams because of its reputation, expertise, and experience in the greater Los Angeles residential real estate market.  The Debtor specifically seeks my assistance for this engagement.  I have several years of residential real estate experience and specialize in the leasing and selling of upscale residential homes and condominiums.  A true and correct copy of my resume is incorporated in Exhibit "2" hereto.

6.      The Debtor requires the assistance of a real estate broker to provide the following services:

    a.    To advertise and market the Property to interested parties;

    b.    To show the Property to interested parties;

    c.    To represent the estate as a seller in connection with the sale of the Property;

    d.    To advise the Debtor with respect to obtaining the highest and best offers available in the present market for the Property; and

    e.    To do such other things as necessary in the context of the employment as real estate broker herein.

7.    By this Application, the Debtor seeks to employ Keller Williams as its real estate broker pursuant to 11 U.S.C. § 327(a) at the expense of the Debtor's bankruptcy estate with compensation to be paid from the sale proceeds pursuant to 11 U.S.C. § 328 without the need for a further application for compensation.

8.    Below is a summary of the most salient terms of the Agreement attached as Exhibit "1" hereto:

(a) The Property may be marketed and sold as twelve (12) separate units or, alternatively, as an entire project.

(b) In the event of a sale of the Property as an entire project, the sale price shall be ten million and five hundred thousand dollars ($10,500,000), or such other price and terms as the Debtor may agree to.

(c) If the sale price of the Property as an entire project is less than $8,000,000, Keller Williams shall be paid a commission equal to five percent (5%) of the gross sale price.

(d) If the sale price of the Property as an entire project is more than $8,000,000, Keller Williams shall be paid a commission equal to four percent (4%) of the gross sale price.

(e) In the event of a sale of the Property to the Tsangs, Keller Williams will not be paid any commission.

(f) The individual listing prices for each Condominium Unit shall be in the amounts listed in Addendum One annexed to the Agreement.

(g) Disputes between the Debtor and Keller Williams will be resolved by mediation or binding arbitration.

(h) If Keller Williams finds a prospective purchaser for the Property, Keller Williams may also represent and act as the agent for such purchaser. The Debtor authorizes and consents to such dual agency, subject to Bankruptcy Court approval.

(i) The Debtor agrees to indemnify, defend, and hold Keller Williams harmless for all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect information supplied by the Debtor, or from any material facts that the Debtor knows but fails to disclose, subject to Bankruptcy Court approval.

9. Keller Williams is not a creditor, an equity security holder or an insider of the Debtor.

10. Keller Williams is not and was not an investment banker for any outstanding security of the Debtor. Keller Williams has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

11. Neither Keller Williams nor any member of Keller Williams is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

12. To the best of my knowledge, Keller Williams does not hold or represent any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

13. To the best of my knowledge, Keller Williams is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code. Neither Keller Williams nor any person employed by Keller Williams has any connection with the estate, any insider of the Debtor, or any other related entities in which the estate may have an interest. Neither Keller Williams nor any person employed by Keller Williams represents any other entity having an adverse interest to the estate or any creditor.

14. I understand the provisions of 11 U.S.C. §§ 327, 328, 330 and 331 which require, among other things, Court approval of the Debtor's employment of Keller Williams as its real estate broker and of the commission that Keller Williams will receive upon the sale of the Property. Pursuant to this Application, and in accordance with 11 U.S.C. § 328(a), the Debtor

DocuSign Envelope ID: 4133303B-F5EB-46CB-80EA-4B42CA0DC37C

1  seeks Court authority to pay to Keller Williams its commission, if a sale occurs, from the

2  proceeds of the sale without the need for a fee application and hearing thereon.

3         I declare and verify under penalty of perjury under the laws of the United States of

4  America that the foregoing is true and correct to the best of my knowledge.

5         Executed on this _2___ day of March 2015 at Santa Monica, California.

6

7                                                      DocuSigned by:

8                                        _____
                                              LULU KNOWLTON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

**CALIFORNIA ASSOCIATION OF REALTORS®**

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 11/13)

1. **EXCLUSIVE RIGHT TO SELL:** _____ *Gold River Valley LLC.* _____ ("Seller")
hereby employs and grants _____ *Keller Williams Santa Monica Pacific Palisades* _____ ("Broker")
beginning (date) _*February 16, 2015*_ and ending at 11:59 P.M. on (date) _*February 14, 2016*_ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property in the City of _____ *Pasadena* _____,
County of _____ *Los Angeles* _____, Assessor's Parcel No. _____,
California, described as: _____ *650-652 S. Lake Ave., Pasadena CA 91106* _____ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _____.
**ADDITIONAL ITEMS INCLUDED:** _____
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

3. **LISTING PRICE AND TERMS:**
   **A.** The listing price shall be: _____
   _____ Dollars ($ _____ ).
   **B.** Additional Terms: *See Paragraph 16* _____
   _____.

4. **COMPENSATION TO BROKER:**
**Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker.**
   **A.** Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
   AND _____ *See attached addendum* _____, as follows:
   **(1)** If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   **OR (2)** If within _60_ calendar days **(a)** after the end of the Listing Period or any extension; or **(b)** after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: **(i)** who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or **(ii)** for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 4A(2) unless, not later than **3 calendar days** after the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   **OR (3)** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   **B.** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation due under paragraph 4A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   **C.** In addition, Seller agrees to pay Broker: _____.
   **D.** Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   **(1)** Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 4A, either ☒ _2.500_ percent of the purchase price, or ☐ $ _____.
   **(2)** Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   **E.** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   **F. (1)** Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____.
   **(2)** Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
   **(3)** If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

© 2013, California Association of REALTORS®, Inc.

Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

**RLA REVISED 11/13 (PAGE 1 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Keller Williams-Pacific Palisa, 17383 Sunset Blvd #B280 Los Angeles, CA 90272    Phone: (310)774-3886    Fax:    650-652 S. Lake
Lulu Knowlton    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

*650-652 S. Lake Ave., Pasadena CA 91106*

Property Address: **Pasadena,** _____  Date: **February 13, 2015**

**5. MULTIPLE LISTING SERVICE:**
A. Broker is a participant/subscriber to _____**CLAW**_____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property is not listed with the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network -and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(a)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(b)** Information about Seller's Property will not be transmitted to various real estate Internet sites that are used by the public to search for property listings; **(c)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

| Seller's Initials ___/___ | Broker's Initials **LK** ___/___ |
|---|---|

---

B. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS a form signed by Seller (C.A.R. Form SELM or the local equivalent form).

C. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller (C.A.R. Form SELI or the local equivalent form). Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**(1) Property Availability:** Seller can instruct Broker to have the MLS not display the Property on the Internet.

**(2) Property Address:** Seller can instruct Broker to have the MLS not display the Property address on the Internet.

Seller understands that the above opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**(3) Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands **(i)** that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other Internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

**(a) Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property.

**(b) Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property.

| Seller's Initials ( ___ )( ___ ) |
|---|
| Reviewed by _____ Date _____ |

**RLA REVISED 11/13 (PAGE 2 OF 5)**

*650-652 S. Lake Ave., Pasadena CA 91106*

Property Address: **Pasadena,** _____    Date: ***February 13, 2015***

6. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: **(i)** any Notice of Default recorded against the Property; **(ii)** any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; **(iii)** any bankruptcy, insolvency or similar proceeding affecting the Property; **(iv)** any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and **(v)** any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND SELLER'S DUTIES: (a)** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized to **(i)** order reports and disclosures as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers. **(b)** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 4F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property. **Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect information supplied by Seller, or from any material facts that Seller knows but fails to disclose.**

8. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9. **AGENCY RELATIONSHIPS:**
   A. **Disclosure:** If the Property includes residential property with one-to-four dwelling units, Seller shall receive a "Disclosure Regarding Agency Relationships" (C.A.R. Form AD) prior to entering into this Agreement.
   B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 4F.
   C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and Buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: **(i)** Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; **(ii)** Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and **(iii)** except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   D. **Other Sellers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement.
   E. **Confirmation:** If the Property includes residential property with one-to-four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

10. **SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller.

11. **PHOTOGRAPHS AND INTERNET ADVERTISING:**
   A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others on Broker's website, the MLS, and other marketing sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further agrees that such Images are the property of Broker and that Broker may use such Images for advertisement of Broker's business in the future.
   B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked)☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are **not** insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

Seller's Initials ( ___ ) ( ___ )
Reviewed by _____ Date _____

**RLA REVISED 11/13 (PAGE 3 OF 5)**

*650-652 S. Lake Ave., Pasadena CA 91106*

Property Address: **Pasadena,**                                          Date: **February 13, 2015**

**13. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

**16. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)

*1. If current creditors Elaine and Lana Tsang purchase the property,* ~~Seller agrees to pay Broker 2% of said Purchase~~

~~Price~~ Broker understands 0% commission will be paid.

*2. Property may be marketed and solicited as 12 separate units or as an entire project.*

*3. If Property is sold as an entire project, Broker shall receive 5% for $8,000,000 purchase price  or less and 4% for greater*

*than $8,000,000 purchase price.*

*4. See attached addendum for individual unit prices.*

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**18. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**19. DISPUTE RESOLUTION:**
**A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 19C.**

**B. ARBITRATION OF DISPUTES:**
**Seller and Broker agree that any dispute or claim in Law or equity arising between them regarding the obligation to pay compensation under this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 19C.**
    "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**
    "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

| Seller's Initials A A / | Broker's Initials LK / |
|---|---|

**C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.

| Seller's Initials ( ) ( ) |
|---|
| Reviewed by _____ Date _____ |



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          650-652 S. Lake

*650-652 S. Lake Ave., Pasadena CA 91106*

Property Address: *Pasadena,* _____ Date: *February 13, 2015*

**20. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**21. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____
_____.

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____ Date _2/16/2015_

*Gold River Valley LLC.*
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ Email _____

Seller _____ Date _____

Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ Email _____

Real Estate Broker (Firm) *Keller Williams Santa Monica Pacific Palisades* ____ Cal BRE Lic. # *01499010*
By (Agent) *Lulu Knowlton* *Lulu Knowlton* ____ Cal BRE Lic # *01950225* Date _3/1/2015_
Address *17383 Sunset Blvd.* ____ City *pacific palisades* ____ State *CA* Zip *90272*
Telephone *(818)749-0814* ____ Fax _____ Email *luluxu518@yahoo.com*

© 1991-2013, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**RLA REVISED 11/13 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT -EXCLUSIVE (RLA PAGE 5 OF 5)**



CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 11/13)

Property Address: *650-652 S. Lake Ave., Pasadena CA 91106, Pasadena,* _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2013, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

**SA REVISED 11/13 (PAGE 1 OF 2)**

Seller's Initials ( ____ ) ( ____ )
Reviewed by ____ Date ____



**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

650-652 S. Lake Ave., Pasadena CA 91106

Property Address *Pasadena,* _____    Date *February 13, 2015* _____

## 3. CONTRACT TERMS AND LEGAL REQUIREMENTS:

**A. Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

**B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

**C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

**D. Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not limited to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding written statements of compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the retrofit standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of compliance.

**E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

**F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

## 4. MARKETING CONSIDERATIONS:

**A. Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests and organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for sale, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

**B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

**C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

**D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

## 5. OTHER ITEMS: _____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____    Date 2/16/2015

Print Name *Gold River Valley LLC.*

Seller _____    Date _____

Print Name _____

Real Estate Broker *Keller Williams Santa Monica Pacific Palisades* By *Lulu Knowlton*    Date 3/1/2015
(Agent) *Lulu Knowlton*

Address *17383 Sunset Blvd* _____ City *pacific palisades* ___ State *CA* ___ Zip *90272*

Telephone *(818)749-0814* ___ Fax _____ E-mail *luluxu518@yahoo.com*

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.
Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

SA REVISED 11/13 (PAGE 2 OF 2)





**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**ADDENDUM**
(C.A.R. Form ADM, Revised 4/12)

No. *one*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☒ Other *Residential Listing Agreement*

dated _____ *February 13, 2015* _____ , on property known as _____ *650-652 S. Lake Ave., Pasadena CA 91106*

*Pasadena,*

in which _____ is referred to as ("Buyer/Tenant")

and _____ *Gold River Valley LLC.* _____ is referred to as ("Seller/Landlord").

1. Listing price of entire projection shall be $10,500,000.

2. Listing Price of individual units shall be:

| unit 1 | - | $1,028,500.00 |
| unit 2 | - | $918,500.00 |
| unit 3 | - | $973,500.00 |
| unit 4 | - | $951,500.00 |
| unit 5 | - | $973,500.00 |
| unit 6 | - | $973,500.00 |
| unit 7 | - | $1,281,500.00 |
| unit 8 | - | $1,281,500.00 |
| unit 9 | - | $1,160,500.00 |
| unit 10 | - | $1,160,500.00 |
| unit 11 | - | $1,281,500.00 |
| unit 12 | - | $1,355,000.00 |

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____    Date  2/16/2015

Buyer/Tenant _____    Seller/Landlord _____
*Gold River Valley LLC.*

Buyer/Tenant _____    Seller/Landlord _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2012, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____


EQUAL HOUSING
OPPORTUNITY

**ADM REVISED 4/12 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Keller Williams-Pacific Palisa, 17383 Sunset Blvd #B280 Los Angeles, CA 90272          Phone: (310)774-3886     Fax:          650-652 S. Lake
Lulu Knowlton          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**EXHIBIT 2**

RESUME



# Lulu Knowlton

## Affiliation:

- Keller Williams - Santa Monica

Central to Lulu Knowlton's success as a real estate agent is her laser focus and dedication to her clients. Her entire client-centric practice revolves around the passion and commitment to providing extraordinary service and results for her clients. She accomplishes this through meticulous attention to detail, painstaking research and knowledge of the local markets and being her client's greatest advocate. She attributes her success to "working extremely hard and having impeccable integrity in always keeping her clients' interest at the forefront. It is a distinct honor and pleasure in helping someone buy or sell their home or other real estate and fulfill their dreams."

A recent transaction closed in December 2014 is instructive of her service and value to her clients. A foreign investor had inquired about acquiring real estate for investment in Los Angeles that would require minimal ongoing property management. In less than a week, Lulu sourced properties, toured them with the client and entered into the purchase agreement for a CenturyCity condominium. Thereafter, she scheduled, coordinated and handled all the inspections, negotiated a significant credit based on the results and closed the transaction. All in under thirty days. Additionally, in less than three weeks after the closing, she coordinated and managed a significant remodeling of the bathrooms and flooring and leased the unit for a two-year term.

Lulu brings an entrepreneurial spirit to her real estate business that was founded on her prior success in establishing, running and managing several international business. Her fluency in Chinese (Mandarin), Russian and English, as well as her understanding of the cultural nuances important to conducting businesses in the United States, China, Russia and Europe have been key ingredients in her successful business career.

Lulu was born in Chongqing, China and grew up in the Sichuanprovince of China. In 1992, after graduating from the Sichuan Foreign Language Institute with a Bachelor Degree in Russian Literature, she moved to Moscow and worked for several import/export companies, including China South-West Import & Export Company and Shanxi Cereals, Oils and Food. Under Lulu's direction, the import/export revenues at Shanxi doubled in only one year.

On the heels of this successful experience, in 1995 Lulu established her own import/export company, Polianta-M Import & Export Company. She served as the owner/president of Polianta for ten years and did import/export business in over 10 countries. The business grew rapidly as the Russian economy was quickly transitioning to a market based capitalist structure. The growth was not without challenges, as the political and business environment was extremely fluid and dynamic.

Lulu also created another company, Aliti International Gifts, which specialized in the import of gift products from China to Russia. She started Aliti to tap into the growing consumer demand in Russia created by the Perestroika movement of the early 1990s. Chinese gift products were in high demand as the standard of living in Russia improved dramatically and Aliti served this demand. With an expertise in

the import/export business, Lulu was solicited and served as a consultant, for many other import/export businesses and freight companies, including China Safety Air Transportation Company.  Customs was an especially important area where she was able to assist companies in navigating and solving difficult and confusing issues.

In 2007, Lulu relocated to the United States and became Deputy Director with Ley Grand Food Corporation based in Los Angeles, California.  Ley Grand processes and prepares food products and is the largest peanut and assorted grain importer in Russia.  As Deputy Director, Lulu was tasked with starting the US operation.  In only two years, she acquired a processing plant, staffed it and traveled the US extensively in attracting clients for the purchase of the varied food products.

Lulu is married and has a five year old son Andrew.  Her husband, Adam, is a real estate attorney with Loeb & Loeb LLP in CenturyCity.  He encouraged her to enter the real estate business and provides a great source of knowledge and experience in resolving issues and solving problems in successfully closing her real estate deals.



Lulu Knowlton | Keller Williams - Santa Monica | 2701 Ocean Park Blvd. #140, Santa Monica, CA 90405 | Mobile: 818-749-0814 | luluxu518@yahoo.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **APPLICATION OF DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY KELLER WILLIAMS SANTA MONICA/ PACIFIC PALISADES AS REAL ESTATE BROKER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328; DECLARATION OF LULU KNOWLTON IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 4, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Simon Aron    saron@wrslawyers.com
- Marianne M Dickson    MDickson@seyfarth.com, shobrien@seyfarth.com
- David B Golubchik    dbg@lnbyb.com, dbg@ecf.inforuptcy.com;stephanie@lnbyb.com
- Elsa M Horowitz    ehorowitz@wrslawyers.com
- Jeffrey S Kwong    jsk@lnbyb.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **March 4, 2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Thomas B. Donovan
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1352 / Courtroom 1345
Los Angeles, CA 90012

☐ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 4, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 4, 2015 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.